**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TOM BURKE FARMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAYER CROPSCIENCE LP, BAYER CROPSCIENCE, INC., CORTEVA, INC., CARGILL INCORPORATED, BASF CORPORATION, SYNGENTA CORPORATION, WINFIELD SOLUTIONS, LLC, UNIVAR SOLUTIONS, INC., FEDERATED CO-OPERATIVES LTD., CHS INC., NUTRIEN AG SOLUTIONS INC., GROWMARK INC., GROWMARK FS, LLC, SIMPLOT AB RETAIL SUB, INC., AND TENKOZ, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

## INTRODUCTION

1.     Plaintiff, on behalf of itself individually and on behalf of all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to itself and upon information and belief as to all other matters, and based on the investigation of counsel, brings this class action complaint to recover injunctive relief, treble damages, and other relief as appropriate, based on Defendants Bayer CropScience, LP, Bayer CropScience, Inc., Corteva, Inc., Cargill Incorporated, BASF Corporation, Syngenta Corporation, Winfield Solutions, LLC, Univar Solutions, Inc., Federated Co-Operatives Ltd., CHS Inc., Nutrien Ag Solutions Inc., Growmark Inc.,

1

Growmark FS, LLC, Simplot AB Retail Sub, Inc., and Tenkoz, Inc. (collectively, "Defendants") violation of federal and state antitrust laws, unfair competition laws, consumer protection laws, and unjust enrichment laws of the several States.

2.    Plaintiff seeks to represent classes consisting of persons and entities who purchased Crop Inputs, for their own use and not for resale, in the United States from at least as early as January 1, 2014 through the present (the "Class Period") from the Defendants, or through Defendants' authorized retailers.

## NATURE OF ACTION

3.    This action arises from an unlawful agreement between Defendants to artificially increase and fix the prices of seeds and crop protection chemicals such as fungicides, herbicides, and insecticides ("Crop Inputs") used by farmers. Defendants are manufacturers, wholesalers, and retailers of Crop Inputs.

4.    Defendants Bayer CropScience, Inc., Corteva, Inc., Syngenta Corporation, and BASF Corporation (the "Manufacturer Defendants"), together with Defendants Cargill Incorporated, Winfield Solutions, LLC, Univar Solutions, Inc. (the "Wholesaler Defendants"), and Defendants CHS Inc., Nutrien Ag Solutions Inc., Growmark Inc., Simplot AB Retail Sub, Inc., Tenkoz Inc., and Federated Co-Operatives Ltd. (the "Retailer Defendants"), have established a secretive distribution process that keeps Crop Inputs prices inflated at supracompetitive levels and, in furtherance of their conspiracy, denies farmers access to relevant market information, including transparent pricing terms that would allow comparison shopping and better-informed purchasing decisions and information about seed relabeling practices that would enable farmers to know if they are

2

buying newly developed seeds or identical seeds repackaged under a new brand name and sold for a higher price.

5.     The cost of Crop Inputs is increasing at a significantly faster rate than profits from farmers' crop yields. The skyrocketing Crop Inputs prices are causing farmers to take on operating debt and often forcing them into bankruptcy, creating a crisis situation in the agriculture community for American farmers who are critical to the nation's food supply. Neither the cost increases nor the price disparities are attributable to any independent legitimate cause, such as weather or other factors.

6.     Beginning at least as early as 2014, new online Crop Inputs sales platforms launched and offered pricing comparison tools to allow farmers to view what other farmers were paying for the same Crop Inputs, increasing price transparency. These online sales platforms, including Farmers Business Network ("FBN") and AgVend Inc., became successful with farmers.

7.     Viewing this success, Defendants conspired and coordinated to boycott these online Crop Inputs sales platforms because of the threat they posed to Defendants' market position and price control. For example, the Manufacturer Defendants and Wholesaler Defendants agreed amongst themselves not to sell Crop Inputs to FBN, and enforced strict discipline on Retailer Defendants who failed to comply with the boycott. Defendants Syngenta, Bayer, BASF, and Corteva used audits and inspections of their authorized retailers to ensure that online Crop Inputs sales platforms were unable to obtain Crop Inputs from their authorized retailers.

8.    Defendants' boycott succeeded. As a result of Defendants' anticompetitive conduct, online Crop Inputs sales platforms, such as FBN and AgVend, were unable to purchase Defendants' Crop Inputs in order to sell them on their platforms. Because Defendants are the dominant manufactures and sellers of Crop Inputs, this was a devastating blow to these sales platforms and directly harmed farmers in taking away a lower cost option for purchasing these Crop Inputs.

9.    As a direct and proximate result of Defendants' anticompetitive conduct, Defendants' have maintained supracompetitive prices for Crop Inputs by denying farmers access to accurate pricing information and have injured farmers by forcing farmers to accept opaque price increases that drastically outweigh any increase in crop yields or market prices.

10.    Defendants' anticompetitive conduct is the subject of ongoing investigations by the Canadian Competition Bureau ("CCB") and the United States Federal Trade Commission ("FTC").

11.    A Canadian federal court has found that there is sufficient evidence to require Defendants to also produce records concerning their coordinated anticompetitive conduct in the United States.

12.    The Federal Trade Commission ("FTC") is likewise investigating anticompetitive conduct in the Crop Inputs market. At least one defendant, Corteva, has received a subpoena from the FTC directing it to submit documents related to Crop Inputs "in order to determine whether Corteva engaged in unfair methods of competition through anticompetitive conduct."

4

## JURISDICTION AND VENUE

13.    Plaintiff brings this action on behalf of the Classes under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1), and to recover actual and compensatory damages, treble damages, interest, costs, and attorneys' fees for the injury caused by Defendants' conduct. Plaintiff also asserts state law claims on behalf of the Classes to recover actual and/or compensatory damages, double and treble damages as permitted, pre- and post-judgment interest, costs, and attorneys' fees for the injury caused by Defendants' conduct.

14.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants; and (ii) Plaintiff's state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

15.    Venue is proper in this Court pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. § 1391(b), (c) and (d), because one or more Defendants resided or transacted business in this District, is licensed to do business or is doing business in this District, and because a substantial portion of the affected interstate commerce described herein was carried out in this District.

5

16.     This Court has personal jurisdiction over all Defendants because, *inter alia*, they: (a) transacted business throughout the United States, including in this District; (b) manufactured, shipped, sold, and/or delivered substantial quantities of Crop Inputs throughout the United States, including this District; (c) had substantial contacts with the United States, including this District; and/or engaged (d) in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including this District.

17.     The activities of Defendants and all co-conspirators, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on the foreign and interstate commerce of the United States.

## TRADE AND COMMERCE

18.     This action involves the markets for Crop Inputs in the United States, including the manufacture of Crop Inputs, the wholesale market for Crop Inputs, and the retail market for Crop Inputs.

19.     During the Class Period, Defendants sold Crop Inputs in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial District.

20.     During the Class Period, Defendants collectively controlled a dominant share of the market for Crop Inputs in the United States.

21.     Defendants' business activities substantially affected interstate trade and commerce in the United States and caused injury in the United States.

## PARTIES

**Plaintiff**

22.    Plaintiff Tom Burke Farms was a resident at all relevant times of Pennsylvania. During the Class Period and while residing in Pennsylvania, Plaintiff purchased Crop Inputs, for his own use and not for resale, that were manufactured or sold by one or more Defendants. Plaintiff Tom Burke Farms suffered injury as a result of Defendants' conduct alleged herein.

**Manufacturer Defendants**

23.    Bayer AG is a multinational pharmaceutical, chemical, and agriculture company. It organizes itself into four divisions, each with its own management and corporate organization. Legal entities within each division work together, follow a common strategy, and report up to the same level of management.

24.    Defendant Bayer CropScience Inc. is a wholly-owned subsidiary of Bayer AG headquartered in St. Louis, Missouri and incorporated in New York that develops, manufactures, and sells Crop Inputs in the United States.

25.    Defendant Bayer CropScience LP is a wholly-owned subsidiary of Bayer AG headquartered in Research Triangle Park, North Carolina, and is a crop science company that sells Crop Inputs in the United States.

26.    Bayer CropScience Inc. and Bayer CropScience LP both operate as part of the Bayer Group's Crop Science division.

27.     Defendant Corteva Inc. is a domestic corporation headquartered in Wilmington, Delaware, that develops, manufactures, and sells Crop Inputs in the United States.

28.     Defendant BASF Corporation is headquartered in Florham Park, New Jersey, and is the principal U.S.-based operating entity and largest subsidiary of BASF SE, a multinational pharmaceutical, seed, and chemical company. BASF develops, manufactures, and sells Crop Inputs in the United States.

29.     Defendant Syngenta Corporation is the main U.S.-based operating subsidiary of Syngenta AG, and is headquartered in Wilmington, Delaware. Syngenta develops, manufactures, and sells Crop Inputs in the United States.

**Wholesaler Defendants**

30.     Defendant Cargill, Inc. is a domestic corporation headquartered in Minnetonka, Minnesota. Cargill owns and operates a wholesaler AgResource Division, which distributes Crop Inputs to Cargill's retail network and to retailers. Cargill's AgResource Division maintains contracts with each of Bayer, Corteva, BASF, and Syngenta entitling it to purchase and distribute branded Crop Inputs and entitling it to special rebates.

31.     Defendant Winfield Solutions, LLC ("Winfield United") is a domestic corporation headquartered in Arden Hills, Minnesota and incorporated in Delaware. Winfield United is a Crop Input wholesaler. It maintains contracts with each of Bayer, Corteva, BASF, and Syngenta authorizing it to purchase and distribute branded Crop Inputs and entitling it to special rebates. Winfield United is also a major Crop Input

8

retailer that operates as a cooperative owned by its members, which are 650 Crop Input retail businesses operating 2,800 retail locations throughout the United States and parts of Canada.

32.     Defendant Univar Solutions, Inc. is a Crop Input wholesaler. Univar maintains contracts with each of Bayer, Corteva, BASF, and Syngenta authorizing it to purchase and distribute branded Crop Inputs and entitling it to special rebates. Univar Solutions, Inc. is a domestic corporation headquartered in Illinois and incorporated in Delaware.

**Retailer Defendants**

33.     Defendant CHS Inc. is one of the largest crop input wholesalers in the United States. Like many large wholesalers, it also operates retail networks bearing the CHS brand around the country that sell Crop Inputs from brick and mortar stores. CHS Inc. is incorporated and headquartered in the state of Minnesota.

34.     CHS and the retail networks it operates maintain contracts with each of Bayer, Corteva, BASF, and Syngenta authorizing it to purchase and distribute Crop Inputs and entitling it to special rebates.

35.     Defendant Nutrien Ag Solutions, Inc. is both a Crop Input wholesaler and the largest Crop Input retailer in the United States. It sells Crop Inputs to farmers throughout the country and maintains contracts with Bayer, Corteva, BASF, and Syngenta, each authorizing it to purchase and distribute Crop Inputs and entitling it to special rebates. Nutrien Ag Solutions, Inc. is incorporated in Delaware and has its principal place of business in Colorado.

36.     Defendant GROWMARK, Inc. d/b/a Farm Supply or FS, is a large Crop Input retailer headquartered in Illinois, with brick and mortar locations throughout the Midwestern United States. Growmark is incorporated in Delaware. Growmark maintains contracts with Bayer, Corteva, BASF, and Syngenta, each authorizing it to purchase and distribute Crop Inputs, and entitling it to special rebates.

37.     Defendant Tenkoz Inc. is one of the largest Crop Input retailers in the United States. Tenkoz purchases and sells 25% of all crop protection chemicals sold in the United States annually through 550 retail locations and 70 wholesale locations around the country. Tenkoz is incorporated and headquartered in Georgia. Tenkoz maintains contracts with Bayer, Corteva, BASF, and Syngenta, each authorizing it to purchase and distribute Crop Inputs and entitling it to special rebates.

38.     Defendant Simplot AB Retail Sub, Inc. f/k/a Pinnacle Agriculture Distribution, Inc. is a large Crop Input wholesaler and retailer that operates 135 retail locations across 27 states. Simplot is headquartered and incorporated in Mississippi. Simplot maintains contracts with Bayer, Corteva, BASF, and Syngenta, each authorizing it to purchase and distribute Crop Inputs and entitling it to special rebates.

39.     Defendant Federated Co-operatives Ltd. is a large Crop Input retailer. It maintains contracts with Bayer, Corteva, BASF, and Syngenta, each authorizing it to purchase and distribute Crop Inputs and entitling it to special rebates. Federated is under investigation by the Canadian Competition Bureau for engaging in coordinated anticompetitive practices designed to exclude competition in the Crop Input market.

## FACTUAL ALLEGATIONS

40.    Farmers in the United States are experiencing drastically increasing operating expenses while revenue and profits from their crop yields remain stagnant. For example, between 1995 and 2011, the cost of growing soybeans and corn tripled while yields for those same crops rose by only 18.9% and 29.7% respectively.

41.    This trend has continued in recent years. One study found that seed, fertilizer, and pesticide costs comprised 32% of crop revenue between 1990 and 2006, 36% of revenue between 2006 and 2015, but 48% of crop revenue in 2015.[1]

42.    The rate of cost increases is not attributable to any legitimate cause, as research and development expenditures have decreased over the past several years. Instead, the increases are a result of unjustifiably inflated, supracompetitive prices as a result of Defendants' anticompetitive conduct, including Defendants' group boycott of online sales platforms such as FBN and AgVend.

43.    The market for Crop Inputs is structured to be secretive and opaque, in order to obscure pricing data and product information that farmers need to make informed purchasing decisions about Crop Inputs. Because farmers lack the objective information and data needed to evaluate their purchases, farmers are forced to pay higher prices for Crop Inputs than they would in a competitive market. On top of this, farmers

---

[1] Schnitkey, G. and S. Sellars. "Growth Rates of Fertilizer, Pesticide, and Seed Costs over Time." *farmdoc daily* (6):130, Department of Agricultural and Consumer Economics, University of Illinois at Urbana-Champaign, July 12, 2016, https://farmdocdaily.illinois.edu/2016/07/growth-rates-of-fertilizer-pesticide-seed-costs.html.

11

are unable to buy Crop Inputs without paying for the unnecessary overhead of brick-and-mortar retailers.

44.     The Manufacturer Defendants, which develop and produce between 75% to 90% of the most popular name brand Crop Inputs, guard their product prices from consumers. The Manufacturer Defendants allow their products to be sold only by wholesalers, including the Wholesaler Defendants, retailers owned or operated by the manufacturer, and licensed "authorized retailers," such as the Retailer Defendants.

45.     The contracts granting "authorized retailer" licenses contain strict confidentiality provisions that prohibit authorized retailers from disclosing the manufacturers' prices or any incentives, rebates, or commissions offered by the manufacturers to the authorized retailers.

46.     Manufacturers also engage in "seed relabeling," which is the taking of seeds that have long been on the market already and repackaging the exact same seeds under a new brand name so that they can be sold at a higher price. This practice takes further advantage of farmers' lack of access to objective performance data, and can cause farmers to overpay for seeds that could have been purchased for less from a different brand and/or to have less genetic diversity in seeds across their farms than they anticipated.

47.     At the retail level, pricing is likewise opaque and obscured. Wholesalers' contracts with authorized retailers contain strict confidentiality provisions, prohibiting retailers from disclosing the price paid to the wholesaler for Crop Inputs or the price at which retailers sell those exact same Crop Inputs to other farmers. In addition, retailers

12

sell Crop Inputs bundled together with related services, such as spraying or applying chemicals, to make it more difficult for farmers to ascertain the cost of any individual Crop Input or bundled service.

48.     Online Crop Input sales platforms began launching in 2014, with the goal of modernizing the market, increasing price transparency, and providing farmers access to Crop Inputs directly from the Manufacturer Defendants. These online marketplaces sought to avoid the opaque and inefficient distribution system consisting of Wholesaler and Retailer Defendants.

49.     Initially, online Crop Input sales platforms were successful. For example, more than 12,000 farmers signed up for FBN's service that provided objective performance data on Crop Inputs, and 6,000 farmers signed up for FBN's electronic sales platform.

50.     Wholesaler and Retailer Defendants recognized the threat posed by these online sales platforms to their market position and profit margins. A report published by CoBank, a cooperative partly owned by Crop Input retailers and a major lender to grain cooperatives, explained that price transparency would enable farmers to negotiate with Crop Input retailers and decrease their profit margins:

> Despite relatively low sales, e-commerce companies pose a threat to brick-and-mortar ag retailers in two ways. First, any new competitor will erode sales and margins to some degree and second, e-commerce sites increase transparency for product prices.
>
> These e-commerce sites provide farmers with several sources of product price information that are just clicks away. Farmers can then leverage that information in negotiations with local brick-and-mortar retailers. Traditional ag retailers that bundle products and services together under the

product price are losing some customers to e-commerce sites that provide only the product. The e-commerce channel allows cost-sensitive farmers to eliminate service costs like custom application and product warranties.[2]

51.    Defendant CHS, upon learning of FBN's online buying platform launch in 2016, sent a letter to farmers dissuading them from using FBN by falsely claiming that although FBN would be able to offer the same products at lower costs, "FBN just does it with little overhead and without returning any profits to you the farmer, while lining the pockets of investors and big data companies like Google."

52.    CropLife America is a trade association made up of major Crop Input manufacturers, wholesalers, and retailers, and serves as an ideal vehicle for collusion. CropLife America's board of directors is chaired by an executive from one of the Manufacturer Defendants, currently Paul Rea from BASF and previously Suzanne Wasson from Corteva. For the 2016-19 term, CropLife America's board of directors included executives from Defendants Bayer, CHS, Growmark, Tenkoz, and Simplot. There is not a single representative for farmers or farmer groups on CropLife America's board of directors, despite CropLife America's mission to "help ensure growers and consumers have the technologies they need to protect crops, communities, and ecosystems from the threat of pests, weeds, and diseases in an environmentally sustainable way."

53.    CropLife America publishes the trade publication CropLife Magazine, which reiterated the concerns expressed by CoBank about the threat posed by online

---

[2] https://www.cobank.com/corporate/news/ag-retailers-look-to-retool-strategy-for-success.

14

Crop Input sales platforms to Crop Inputs retailers' business. CropLife stated it was "concerned that the retailer could be disintermediated—i.e., that electronic platforms would 'cut out the middle man'—allowing growers to find product conveniently and at a lower market price," and decried the "devil known as 'price transparency,'" stating that "[g]rowers were not really as interested in buying and selling and storing product as they were in printing price lists off the Internet and waving them in their retailer's faces. Already low margins were about to race to the bottom."

54.    CropLife's PACE Advisory Council—a committee composed of the "heads of major ag retailers, market suppliers, equipment makers, and other agricultural analysts"—clearly identified the threat posed by online sales platforms to retailers and wholesalers at its 2017 annual meeting. CropLife's coverage of the event reported that "three letters . . . continually cropped up no matter what the topic of conversation happened to be – FBN (Farmers Business Network). To say that all things related to FBN and its business practices dominated much of the day-long event would be a gross understatement. Several members of the PACE Council described how FBN had negatively affected their business during 2017 by cutting into their already slim margins on various products."

55.    The Retailer Defendants and the Wholesaler Defendants knew that retaining their market positions and profit margins depended on excluding online sales platforms from the market, so they conspired to eliminate the platforms' product supply. To do so, the Retailer and Wholesaler Defendants pressured the Manufacturer

Defendants—which rely on the Wholesaler and Retailer Defendants to recommend and sell their products to farmers—to cut off FBN's supply of Crop Inputs.

56.    In 2016, Defendant Bayer formed an internal task force to study the long-term competitive impact of FBN's online platform.

57.    The Manufacturer Defendants complied with the demands of the Wholesaler and Retailer Defendants to cut off FBN's supply, and Defendants initiated a group boycott of online sales platforms, including FBN. When FBN attempted to purchase Crop Inputs from the Manufacturer and Wholesaler Defendants, they all refused and offered pretextual excuses for their refusal.

58.    For example, when Syngenta's Head of Crop Protection Sales in the United States learned that a small number of branded Crop Inputs had been sold on online platforms in violation of Defendants' boycott, he falsely claimed that online platforms would deliver counterfeit products and that, "[w]hen online entities acquire products from sources other than authorized dealers or contracted distributors, you'd better question and be concerned about the quality."

59.    To ensure the success of Defendants' boycott, Defendants imposed strict penalties on retailers that failed to comply. For example, Syngenta initiated an audit of its authorized retailers after learning that some retailers had sold Crop Inputs product to FBN despite the boycott in order to identify and punish the retailers that made those sales to FBN.

60.    Defendants Bayer, BASF, and Corteva utilize mandatory language in their form contracts with authorized retailers that permit audits of authorized retailers' books

16

and records and on-site inspections at any time. Defendants Bayer, BASF, and Corteva used these contractual provisions to ensure that online sales platforms could not purchase branded Crop Inputs from an authorized retailer.

61.     The impact of Defendants' boycott extended past branded product to generic products (i.e., Crop Inputs sold by non-Defendant manufacturers after the Manufacturer Defendants' patents expire). In a 2018 Forbes article, the CEO of a generic chemical products company stated it was wary of supplying FBN because it could anger existing sales channels, and that "[i]n an ideal world, if I could flip the switch and sell to these guys, I would do it in a heartbeat."[3]

62.     FBN also purchased Yorkton, a Canada-based retailer with longstanding supply agreements with Defendants Bayer, Syngenta, BASF, Corteva, and Winfield. Those agreements would have provided FBN with inventory of Crop Inputs to sell to farmers, if they had been honored. However, the Wholesaler and Retailer Defendants threatened to retaliate against the Manufacturer Defendants if they maintained the agreements. As a result, the Manufacturer Defendants agreed to boycott Yorkton and abruptly canceled their longstanding supply contracts within a few months of FBN's March 2018 acquisition of Yorkton.

63.     After FBN purchased Yorkton, in an email dated April 6, 2018, Defendant Univar stated that it had informed FBN that Univar would cease to conduct business with FBN after July 31, 2018, and stated: "FBN is a data company that wants to collect and

---

[3] https://www.forbes.com/sites/amyfeldman/2018/06/19/farming-ag-agriculture-farmers-business-network/?sh=246579466312.

aggregate data to eventually sell for a profit to companies that will use the data to make farmers grow us food for nothing. . . . If anyone thinks socialism is going to feed the world just call Russia first and see how that worked out." The Univar email also criticized FBN's model of transparency, stating that "[m]argin compression is not the way to a brighter future and that is all FBN is currently offering."

64.     FBN co-founder Charles Baron stated that the response by the Canadian industry after its purchase of Yorkton was similar to the United States' industry response when FBN first launched in 2014, and that "[t]hese actions caused serious harm and really blocked FBN from being able to provide and fulfill a lot of the basic services we provide growers."

65.     The Defendants' boycott of FBN was successful and caused FBN to begin developing its own products that it can sell to farmers through its online marketplace.

66.     Defendants' boycott also applied to AgVend, and AgVend ultimately shut down its online platform and now establishes web-based storefronts for traditional brick-and-mortar retailers.

67.     As a result of the Defendants' coordinated boycott, farmers are and have been deprived of the opportunity to purchase Crop Inputs at transparent, competitive prices from online platforms. Instead, farmers are forced to continue paying artificially inflated prices for Crop Inputs purchased from local retailers subject to Defendants' confidentiality requirements and seed relabeling practices.

68.     The Canadian Competition Bureau ("CCB") is formally investigating Defendants for collusion under Section 10 of the Competition Act Canada (R.S.C., 1985,

c. C-34). The CCB inquiry is focused on the conduct of Federated Co-operatives Limited, Cargill Limited, Winfield United Canada ULC, Univar Canada Ltd., BASF Canada Inc., Corteva Inc. and/or its affiliates, and Bayer CropScience Inc. and its wholly-owned subsidiary Monsanto Canada ULC in the seed and crop protection markets, and whether those entities engaged in practices reviewable under Part VIII of the Competition Act Canada.

69.     On February 11, 2020, a Canadian federal court granted in full *ex parte* applications made by Canada's Commissioner of Competition for the production of records against Cargill Limited, Winfield United Canada ULC, Univar Canada Limited, BASF Canada Inc., Bayer CropScience Inc. and its wholly-owned subsidiaries Monsanto Canada ULC and Production Agriscience Canada Company, Pioneer Hi-Bred Canada Company and Dow Agrisciences Canada Inc. relating to those practices. Over Defendants' objection, the Canadian federal court found sufficient evidence to require Defendants to produce records concerning their coordinated anticompetitive conduct in the United States as well.

70.     The United States Federal Trade Commission ("FTC") is also investigating potential anticompetitive conduct in the Crop Inputs market. At least one defendant, Corteva, has received a subpoena from the FTC. On May 26, 2020, the FTC issued a subpoena to Corteva, directing it to submit documents pertaining to potential anticompetitive conduct with respect to Crop Inputs. Corteva confirmed in a 10-Q filing that the FTC's subpoena required it "to submit documents pertaining to its crop protection products generally, as well as business plans, rebate programs, offers, pricing

19

and marketing materials specifically related to its acetochlor, oxamyl and rimsulfuron and other related products in order to determine whether Corteva engaged in unfair methods of competition through anticompetitive conduct."

## <u>ANTITRUST INJURY</u>

71.    Defendants' anticompetitive conduct has had the following effects, among others:

    a.  Price competition has been restrained or eliminated with respect to Crop Inputs;

    b.  The prices of Crop Inputs have been fixed, raised, stabilized, or maintained at artificially inflated levels;

    c.  Purchasers of Crop Inputs have been deprived of free and open competition; and

    d.  Purchasers of Crop Inputs, including Plaintiff, paid artificially inflated prices.

72.    Throughout the Class Period, Plaintiff and Class members purchased Crop Inputs in the United States, for their own use and not for resale, that were manufactured or sold by Defendants.

73.    It is well recognized that in a multi-level chain of distribution, such as exists here, an overcharge is felt throughout the chain of distribution. As noted antitrust scholar Professor Herbert Hovenkamp stated in his treatise, <u>Federal Antitrust Policy, The Law of Competition and Its Practice</u> (1994):

A monopoly overcharge at the top of a distribution chain generally results

in higher prices at every level below. For example, if production of aluminum is monopolized or cartelized, fabricators of aluminum cookware will pay higher prices for aluminum. In most cases they will absorb part of these increased costs themselves and pass part along to cookware wholesalers. The wholesalers will charge higher prices to the retail stores, and the stores will do it once again to retail consumers. Every person at every stage in the chain likely will be poorer as a result of the monopoly price at the top.

Theoretically, one can calculate the percentage of any overcharge that a firm at one distributional level will pass on to those at the next level.

Similarly, Professor Jeffrey K. MacKie-Mason[4] has stated, it is "well known in economic theory and practice, (that) at least some of the overcharge will be passed on by distributors to end consumers."[5]

74.     The purpose of the Defendants' conspiratorial and unlawful conduct was to fix, raise, stabilize, and/or maintain the price of Crop Inputs.

75.     As a direct and proximate result of the alleged violations of antitrust laws, Plaintiff and Class members have sustained injury to their business or property, having paid higher prices for Crop Inputs than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were intended to punish and prevent.

---

[4] Professor MacKie-Mason is a professor in the Department of Economics at the University of California, Berkeley and the former Arthur W. Burks Professor of Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan.
[5] Order re: Class Certification, at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases,* J.C.C.P. No. 4106 (San Francisco Super. Ct. Aug. 29, 2000).

## CLASS ALLEGATIONS

76.     Plaintiff brings this action on behalf of itself, and as a class action under the Federal Rules of Civil Procedure Rule 23(a) and (b) on behalf of the following Classes:

   a.  All persons or entities residing in the United States that, during the Class Period, purchased from a Defendant a Crop Input manufactured by a Manufacturer Defendant;

   b.  All persons or entities residing in the United States that, during the Class Period, purchased from a retailer other than a Retailer Defendant a Crop Input manufactured by a Manufacturer Defendant.

77.     Specifically excluded from the Classes are the following:

   a.  Purchasers of Crop Inputs solely for resale;

   b.  Defendants;

   c.  The officers, directors, or employees of any Defendant;

   d.  Any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant;

   e.  Any federal, state governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff;

   f.  Any juror assigned to this action; and

   g.  Any co-conspirator identified in this action.

78.     **Numerosity**. Because such information is in the exclusive control of Defendants, Plaintiff does not know the exact number of the Class members. Due to the nature of the trade and commerce involved, Plaintiff believes there are thousands, if not

tens of thousands, of members in the Classes and that they are sufficiently numerous and geographically-dispersed throughout the United States so that joinder of all Class members would be impracticable.

79.    **Class Identity**. The above-defined Classes are readily identifiable and ascertainable through existing records.

80.    **Typicality**. Plaintiff's claims are typical of other class members' claims because they were injured through Defendants' uniform misconduct and paid supracompetitive prices for Crop Inputs. Accordingly, by proving their own claims, Plaintiff will necessarily prove the other class members' claims.

81.    **Common Questions Exist and Predominate**. Common legal and factual questions exist as to all Class members. This is particularly true given the nature of Defendants' unlawful anticompetitive conduct, which was generally applicable to the Classes as a whole. These questions include but are not limited to the following:

      a.    Whether Defendants engaged in a combination or conspiracy amongst themselves to fix, raise, maintain, and/or stabilize the prices of Crop Inputs in the United States;

      b.    The identity of additional participants in the alleged combinations and conspiracy, if any;

      c.    The duration of the alleged combination or conspiracy and nature of the acts carried out by Defendants in furtherance of the combination or conspiracy;

    d.   Whether the alleged combination or conspiracy violated Section 1 of the Sherman Act;

    e.   Whether the alleged combination or conspiracy had the effect of artificially inflating the price of Crop Inputs sold in the United States during the Class Period;

    f.   Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws;

    g.   Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiff and Class members, thereby entitling Plaintiff and Class members to disgorgement of all benefits derived by Defendants;

    h.   Whether Defendants' conduct caused injury to the Class members;

    i.   Whether Defendants took actions to conceal their unlawful conspiracy;

    j.   The appropriate injunctive and related equitable relief; and

    k.   The appropriate measure and amount of damages to which Plaintiff and other Class members are entitled.

82.    **Adequacy**. Plaintiff can and will fairly and adequately represent and protect the class members' interests and have no interests that conflict with or are antagonistic to those of the classes. Moreover, Plaintiff's attorneys are experienced and competent in antitrust and class action litigation.

83.    **Superiority**. Class action treatment is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted because: among other things, such treatment will permit a large number of similarly situated persons to prosecute their

common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

84.    The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

85.    Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

## THE STATUTES OF LIMITATIONS DO NOT BAR PLAINTIFF'S CLAIMS

86.    Any applicable statute of limitations for Plaintiff and the Classes has been tolled and/or Defendants are equitably estopped from asserting a statute of limitations defense by reason of Defendants' concealment of the conspiracy.

87.    Group boycotts and other antitrust violations are inherently self-concealing. Throughout the Class Period, Defendants and their co-conspirators engaged in secret conspiracies that did not reveal facts that would put Plaintiff or the Classes on inquiry notice that there was a conspiracy to fix prices of Crop Inputs, and effectively and affirmatively concealed their unlawful combination and conspiracy from Plaintiff and the Classes.

88.    Plaintiff and Class members had neither actual nor constructive knowledge of the facts constituting their claims for relief. Plaintiff and Class members did not discover, nor could have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until shortly before filing this Complaint, because of the deceptive practices and secrecy employed by Defendants and their co-conspirators to conceal their combination.

89.    As discussed above, the market for Crop Inputs is structured to maximize opacity in order to deny farmers access to pricing data and product information that farmers need to make informed decisions about Crop Inputs purchases. Defendants use confidentiality provisions in their contracts to restrict disclosure of the prices of Crop Inputs. Defendants also employ seed relabeling and bundling in order to further prevent farmers, including Plaintiff and the Classes, from accessing pricing data and information about the Crop Inputs market.

90.    Plaintiff and the Classes did not have actual or constructive notice of the conspiracy alleged herein until the Canadian Competition Bureau launched its inquiry and issued subpoenas in February 2020, or until Defendant Corteva's September 2020 disclosure that the FTC had subpoenaed Corteva for documents "in order to determine whether Corteva engaged in unfair methods of competition through anticompetitive conduct."

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**Conspiracy to Restrain Trade in Violation of Section 1 of the Sherman Act, 15
U.S.C. § 1**

91.     Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

92.     Beginning in at least 2014, and continuing thereafter to the present, Defendants, by and through their officers, directors, employees, agents, or other representatives, have explicitly or implicitly colluded to (1) artificially raise, fix, maintain, and/or stabilize prices in the Crop Inputs market, and (2) jointly boycott entities that would have introduced price-reducing electronic sales of Crop Inputs in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

93.     Defendants' actions were not mere parallel conduct but took place in the context of multiple facts establishing a conspiratorial agreement.

94.     First, the market for Crop Inputs is highly concentrated, as Defendants BASF, Corteva, Syngenta, and Bayer AG dominate production in virtually every Crop Input category, and control 85% of the corn seed market, over 75% of the soybean seed market, and over 90% of the cotton seed market. The wholesale market is just as concentrated, with seven wholesalers accounting for 70% of all sales volume.

95.     Second, an effective boycott of online sales platforms would not have been feasible without coordination and cooperation among Defendants. The boycott would only work if every Manufacturer Defendant agreed to the plan, otherwise one Manufacturer Defendant breaking with the boycott could have established itself as the

primary supplier to online sales platforms and grown its customer base by operating a new distribution channel for Crop Inputs, taking market share from its rival manufacturers.

96.     Third, Defendants had a strong motive to conspire to preserve the presently opaque market structure. If online sales platforms succeeded in publicly publishing price lists for Crop Inputs, then the Defendants could no longer keep prices confidential and charge varying prices based on geography or through seed relabeling or bundling. The Wholesaler and Retailer Defendants were therefore motivated to conspire amongst themselves and exert pressure on the Manufacturer Defendants to protect their profits without having to compete on the merits of price and services.

97.     Fourth, Defendants formed and maintained their conspiracy using a high degree of inter-firm communication both directly and through wholesalers and retailers, such as through CropLife America's annual board of directors meeting which specifically discussed the threat posed by the entry of online sales platforms. Because no farmer representatives are allowed to participate, these meetings provided a forum for collusion.

98.     Fifth, Defendants' actions were against their apparent economic self-interest. Providing Crop Inputs to online sales platforms presented a significant business opportunity because those platforms represented well-financed customers ready to purchase Crop Inputs in bulk quantity from a Manufacturer or Wholesaler Defendant, would simplify the distribution channel and permit Manufacturer Defendants to retain greater profits by eliminating transport costs, rebates, and incentive programs to wholesalers and retailers, and presented an opportunity for an individual Manufacturer

Defendant to increase profits by growing its market share through sales to farmers nationwide, not merely where its authorized retailers were located or enjoyed the largest market share within a specific geographic area.

99.    Sixth, Defendants are antitrust recidivists, which is probative of future collusion. *See*, *e.g.*, *In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 500-01 (S.D.N.Y. 2004). Competition experts have noted that past experience participating in cartels enables companies to spot opportunities to profitably engage in anticompetitive conduct while evading detection. Competition Policy International maintains a list of the "fifty-two leading recidivists," in which Defendants BASF and Bayer are among the top 5 leading antitrust recidivists, and Defendant Corteva is also listed.

100.    This conspiracy was a *per se* violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

101.    Alternatively, this conspiracy was a "quick look" or rule of reason violation of Section 1 of the Sherman Antitrust Act. There is no legitimate business justification for, or procompetitive benefits attributable to, Defendants' conspiracy and overt acts in furtherance thereof. Any business justification or pro-competitive benefits proffered by Defendants would be pretextual, outweighed by the anticompetitive effects of Defendants' conduct, and, in any event, could be achieved by means less restrictive than the conspiracy and overt acts alleged herein.

102.    Plaintiff and the other members of the Classes have been injured, and will continue to be injured, in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiff and members of the Classes

have paid more for Crop Inputs than they otherwise would have paid in the absence of Defendants' collusive conduct. This injury is of the type the federal antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

103.    In formulating and effectuating this conspiracy, Defendants did those things that they combined and conspired to do, including agreeing to boycott online sales platforms, including FBN and AgVend, by refusing to supply Crop Inputs manufactured by Manufacturer Defendants to online sales platforms.

104.    The combination and conspiracy alleged herein has had the following effects, among others:

      a.   Price competition in the sale of Crop Inputs has been restrained, suppressed, and/or eliminated in the United States;

      b.   Prices for Crop Inputs sold by Defendants and all of their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

      c.   Those who purchase Crop Inputs from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

105.    Plaintiff and Class members have been injured and will continue to be injured by paying more for Crop Inputs manufactured or sold by Defendants than they would have paid and will pay in the absence of the combination or conspiracy as alleged herein.

106.    Plaintiff and Class members are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**SECOND CLAIM FOR RELIEF**
**Violation of the State Antitrust Statutes**

107.    Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

108.    During the Class Period, Defendants engaged in a continuing contract, combination, or conspiracy with respect to the sale of Crop Inputs in an unreasonable restraint of trade in commerce, in violation of the various state antitrust and consumer protection statutes set forth below.

109.    Defendants acts' and combinations in furtherance of the conspiracy have caused unreasonable restraints in the market for Crop Inputs.

110.    As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated Class members who purchased Crop Inputs have been harmed by being forced to pay artificially inflated, supracompetitive prices for Crop Inputs.

111.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in violation of the following state antitrust laws pleaded below.

112.    **Arizona.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Ariz. Rev. Stat. Ann. §§ 44-1402,** *et seq.* with respect to purchases of Crop Inputs in Arizona by Class members and/or purchases by Arizona residents.

       a.    Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated

throughout Arizona; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, members of the Classes seek all forms of relief available under Ariz. Rev. Stat. Ann. §§ 44-1402, *et seq.*

113. **California.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Cal. Bus. & Prof. Code, §§ 16720, *et seq.*** with respect to purchases of Crop Inputs in California by Class members and/or purchases by California residents.

a. During the Class Period, Defendants entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Cal. Bus. & Prof. Code § 16720, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of Crop Inputs at supracompetitive levels.

32

b. The aforesaid violations of Cal. Bus. & Prof. Code § 16720, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of Crop Inputs.

c. For the purpose of forming and effectuating the unlawful trust, the Defendants have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) fixing, raising, stabilizing, and pegging the price of Crop Inputs.

d. The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of Crop Inputs has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Crop Inputs sold by Defendants have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased Crop Inputs directly or indirectly from Defendants have been deprived of the benefit of free and open competition.

e. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property in that they paid more for Crop Inputs than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Cal. Bus. & Prof. Code § 16720, members of the Classes seek

treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Cal. Bus. & Prof. Code § 16720.

114. **Connecticut.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Conn. Gen. Stat. § 35-26,** *et seq.* with respect to purchases of Crop Inputs in Connecticut by Class members and/or purchases by Connecticut residents.

    a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Connecticut; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Connecticut; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

    b. During the Class Period, Defendants' illegal conduct substantially affected Connecticut commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Conn. Gen. Stat. § 35-26, *et seq.* Accordingly, members of the Classes seek all forms of relief available under Conn. Gen. Stat. § 35-24, *et seq.*

34

115. **Hawaii.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Haw. Rev. Stat. Ann. § 480-1,** *et seq.* with respect to purchases of Crop Inputs in Hawaii by Class members and/or purchases by Hawaii residents.

   a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

   b. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

   c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

   d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Haw. Rev. Stat. Ann. § 480-1, *et seq.* Accordingly, members of the Classes seek all forms of relief available under Haw. Rev. Stat. Ann. § 480-1, *et seq.*

116. **Illinois.** Defendants have entered into an unlawful agreement in restraint of trade in violation of 740 Ill. Comp. Stat. Ann. 10/1, *et seq.* with respect to purchases of Crop Inputs by Class members and/or purchases by Illinois residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Ill. Comp. Stat. Ann. 10/3, *et seq.* Accordingly, members of the Classes seek all forms of relief available under 740 Ill. Comp. Stat. Ann. 10/3, *et seq.*

117.    **Iowa.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Iowa Code §§ 553.4 *et seq.*** with respect to purchases of Crop Inputs in Iowa by Class members and/or purchases by Iowa residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Crop Inputs prices were raised, fixed, maintained, and

stabilized at artificially high levels throughout Iowa; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.4, *et seq.* Accordingly, members of the Classes seek all forms of relief available under Iowa Code §§ 553.4, *et seq.*

118.    **Kansas**. Defendants have entered into an unlawful agreement in restraint of trade in violation of **Kan. Stat. Ann. §§ 50-101,** *et seq.* with respect to purchases of Crop Inputs in Kansas by Class members and/or purchases by Kansas residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) members of the Classes were deprived of free and open competition; and (4) members

of the Classes paid supracompetitive, artificially inflated prices for Crop
Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected
Kansas commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members
of the Classes have been injured in their business and property and are
threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of Kan. Stat. Ann. §§ 50-101, *et seq.*
Accordingly, members of the Classes seek all forms of relief available
under Kan. Stat. Ann. §§ 50-101, *et seq.*

119.    **Maine.** Defendants have entered into an unlawful agreement in restraint of
trade in violation of **Me. Rev. Stat. tit. 10, §§ 1101,** *et seq.* with respect to purchases of
Crop Inputs in Maine by Class members and/or purchases by Maine residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop
Inputs price competition was restrained, suppressed, and eliminated
throughout Maine; (2) Crop Inputs prices were raised, fixed, maintained,
and stabilized at artificially high levels throughout Maine; (3) members of
the Classes were deprived of free and open competition; and (4) members
of the Classes paid supracompetitive, artificially inflated prices for Crop
Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Me. Rev. Stat. tit. 10, §§ 1101, et seq. Accordingly, members of the Classes seek all relief available under Me. Rev. Stat. tit. 10, §§ 1101, et seq.

120. **Maryland.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Md. Code, Com. Law §§ 11-201,** *et seq.* with respect to purchases of Crop Inputs in Michigan by Class members and/or purchases by Michigan residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Maryland; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maryland; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected Maryland commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Md. Code, Com. Law §§ 11-201, *et seq.* Accordingly, members of the Classes seek all relief available under Md. Code, Com. Law §§ 11-201, *et seq.*

121. **Michigan.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Mich. Comp. Laws Ann. §§ 445.772, *et seq.*** with respect to purchases of Crop Inputs in Michigan by Class members and/or purchases by Michigan residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mich. Comp. Laws Ann. §§ 445.772, *et seq.* Accordingly, members of the Classes seek all relief available under Mich. Comp. Laws Ann. §§ 445.772, *et seq.*

122. **Minnesota.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Minn. Stat. §§ 325D.51,** *et seq.* with respect to purchases of Crop Inputs in Minnesota by Class members and/or purchases by Minnesota residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minn. Stat. §§ 325D.51, *et seq.* Accordingly, members of the Classes seek all relief available under Minn. Stat. §§ 325D.51, *et seq.*

123.  **Mississippi.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Miss. Code Ann. §§ 75-21-3, *et seq.*** with respect to purchases of Crop Inputs in Mississippi by Class members and/or purchases by Mississippi residents.

a.  Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b.  During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Miss. Code Ann. §§ 75-21-3, *et seq.*

Accordingly, members of the Classes seek all relief available under Miss. Code Ann. §§ 75-21-3, *et seq.*

124.    **Nebraska.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Neb. Rev. Stat. Ann. §§ 59-801, *et seq.*** with respect to purchases of Crop Inputs in Nebraska by Class members and/or purchases by Nebraska residents.

   a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

   b. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

   c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

   d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Neb. Rev. Stat. Ann. §§ 59-801, *et seq.* Accordingly, members of the Classes seek all relief available under Neb. Rev. Stat. Ann. §§ 59-801, *et seq.*

125.    Nevada**.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Nev. Rev. Stat. Ann. §§ 598A.060,** *et seq.* with respect to purchases of Crop Inputs in Nevada by Class members and/or purchases by Nevada residents.

    a.  Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

    b.  During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

    c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nev. Rev. Stat. Ann. §§ 598A.060, *et seq.* Accordingly, members of the Classes seek all relief available under Nev. Rev. Stat. Ann. §§ 598A.060, *et seq.*

126.    **New Hampshire.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.H. Rev. Stat. Ann. §§ 356:2,** *et seq.***,** with respect to

purchases of Crop Inputs in New Hampshire by Class members and/or purchases by New Hampshire residents.

     a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

     b. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

     c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

     d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of N.H. Rev. Stat. Ann. §§ 356:2, *et seq*. Accordingly, members of the Classes seek all relief available under N.H. Rev. Stat. Ann. §§ 356:2, *et seq*.

127. **New Mexico.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.M. Stat. Ann. §§ 57-1-1, *et seq.*** with respect to purchases of Crop Inputs in New Mexico by Class members and/or purchases by New Mexico residents.

    a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) members the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

    b. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of N.M. Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, members of the Classes seek all relief available under N.M. Stat. Ann. §§ 57-1-1, *et seq.*

128. **New York.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.Y. Gen. Bus. Law §§ 340,** *et seq.* with respect to purchases of Crop Inputs in New York by Class members and/or purchases by New York residents.

    a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated

throughout New York; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs, or purchased products that were otherwise of lower quality than they would have been absent the conspirators illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

b.  During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of N.Y. Gen. Bus. Law §§ 340, *et seq*. The conduct set forth above is a *per se* violation of the Act. Accordingly, members of the Classes seek all relief available under N.Y. Gen. Bus. Law §§ 340, *et seq*.

129.  **North Carolina.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.C. Gen. Stat. §§ 75-1, *et seq.*** with respect to purchases of Crop Inputs in North Carolina by Class members and/or purchases by North Carolina residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

c. As a direct and proximate result of the Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of N.C. Gen. Stat. §§ 75-1, *et seq*. Accordingly, members of the Classes seek all relief available under N.C. Gen. Stat. §§ 75-1, *et. seq*.

130. **North Dakota.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.D. Cent. Code §§ 51-08.1-01,** *et seq.* with respect to purchases of Crop Inputs in North Dakota by Class members and/or purchases by North Dakota residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated

throughout North Dakota; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of N.D. Cent. Code §§ 51-08.1-01, *et seq*. Accordingly, members of the Classes seek all relief available under N.D. Cent. Code §§ 51-08.1-01, *et seq*.

131.    **Oregon.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Or. Rev. Stat. §§ 646.705, *et seq.*,** with respect to purchases of Crop Inputs in Oregon by Class members and/or purchases by Oregon residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) members of the Classes were deprived of free and open competition; and (4) members

49

of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Or. Rev. Stat. §§ 646.705, *et seq*. Accordingly, members of the Classes seek all relief available under Or. Rev. Stat. §§ 646.705, *et seq*.

132. **Rhode Island.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **6 R.I. Gen. Laws Ann. §§ 6-36-4,** *et seq.* with respect to purchases of Crop Inputs in Rhode Island by Class members and/or purchases by Rhode Island residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

50

b. During the Class Period, Defendants' illegal conduct substantially affected Rhode Island commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 6 R.I. Gen. Laws Ann. §§ 6-36-4, *et seq.* Accordingly, members of the Classes seek all forms of relief available under 6 R.I. Gen. Laws Ann. §§ 6-13.1-1, *et seq.*

133.    **South Dakota.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **S.D. Codified Laws §§ 37-1-3.1,** *et seq.* with respect to purchases of Crop Inputs in South Dakota by Class members and/or purchases by South Dakota residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of S.D. Codified Laws §§ 37-1-3.1, *et seq*. Accordingly, members of the Classes seek all relief available under S.D. Codified Laws §§ 37-1-3.1, *et seq*.

134.  **Tennessee.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Tenn. Code Ann. §§ 47-25-101, *et seq.*** with respect to purchases of Crop Inputs in Tennessee by Class members and/or purchases by Tennessee residents.

a.  Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

    c.  As a direct and proximate result of the Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tenn. Code Ann. §§ 47-25-101, *et seq.* Accordingly, members of the Classes seek all relief available under Tenn. Code Ann. §§ 47-25-101, *et seq.*

135.   **Utah.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Utah Code Ann. §§ 76-10-3101, *et seq.*** with respect to purchases of Crop Inputs in Utah by Class members and/or purchases by Utah residents.

    a.  Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Utah; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

    b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

    c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Ann. §§ 76-10-3101, *et seq.* Accordingly, members of the Classes seek all relief available under Utah Code Ann. §§ 76-10-3101, *et seq.*

136. **Vermont.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Vt. Stat. Ann. tit. 9, §§ 2453, *et seq.*** with respect to purchases of Crop Inputs in Vermont by Class members and/or purchases by Vermont residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vt. Stat. Ann. tit. 9, §§ 2453, *et seq.*

Accordingly, members of the Classes seek all relief available under Vt. Stat. Ann. tit. 9, §§ 2453, *et seq*.

137. **West Virginia.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **W. Va. Code §§ 47-18-4, *et seq*.** with respect to purchases of Crop Inputs in West Virginia by Class members and/or purchases by West Virginia residents.

    a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

    b. During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of W. Va. Code §§ 47-18-1, *et seq*. Accordingly, members of the Classes seek all relief available under W. Va. Code §§ 47-18-1, *et seq*.

138.    **Wisconsin.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Wis. Stat. §§ 133.01 *et seq.*** with respect to purchases of Crop Inputs in Wisconsin by Class members and/or purchases by Wisconsin residents.

    a.  Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Crop Inputs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

    b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

    c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wis. Stat. §§ 133.01, *et seq.* Accordingly, members of the Classes seek all relief available under Wis. Stat. §§ 133.01, *et seq.*

### THIRD CLAIM FOR RELIEF
### Violation of State Consumer Protection Statutes

139.    Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

140.    Defendants engaged in unfair competition, or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

141.    **Arizona.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Ariz. Rev. Stat. Ann. §§ 44-1521,** *et seq.*, with respect to purchases of Crop Inputs in Arizona by Class members and/or purchases by Arizona residents.

    a.    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Crop Inputs were sold, distributed, or obtained in Arizona and took efforts to conceal their agreements from members of the Classes.

    b.    The aforementioned conduct on the part of the Defendants constituted deceptive or unfair acts or practices in violation of Ariz. Rev. Stat. Ann. § 44-1522(A).

    c.    Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Crop Inputs prices were raised, fixed, maintained, and

stabilized at artificially high levels throughout Arizona; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

d. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce and consumers.

e. As a direct and proximate result of the unlawful conduct of Defendants, members of the Classes have been injured in their business and property and are threatened with further injury.

f. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. Ann. § 44-1522, and, accordingly, members of the Classes seek all relief available under that statute.

142. **Arkansas.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Ark. Code §§ 4-88-101, *et seq.*,** with respect to purchases of Crop Inputs in Arkansas by Class members and/or purchases by Arkansas residents.

a. Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Crop Inputs were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from members of the Classes.

b. The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Ark. Code Ann. § 4-88-107(a)(10).

c. Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

d. During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

e. As a direct and proximate result of the unlawful conduct of Defendants, members of the Classes have been injured in their business and property and are threatened with further injury.

f. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code Ann., § 4-88-107(a)(10) and, accordingly, members of the Classes seek all relief available under that statute.

143. **California.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Cal. Bus. &**

**Prof. Code §§ 17200,** *et seq*, with respect to purchases of Crop Inputs in California by Class members and/or purchases by California residents.

    a. During the Class Period, Defendants marketed, sold, or distributed Crop Inputs in California, and committed and continue to commit acts of unfair competition, as defined by Cal. Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in the acts and practices specified above.

    b. This claim is instituted pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204, to obtain restitution from these Defendants for acts, as alleged herein, that violated Cal. Bus. & Prof. Code § 17200, commonly known as the Unfair Competition Law.

    c. Defendants' conduct as alleged herein violated Cal. Bus. & Prof. Code § 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Cal. Bus. & Prof. Code § 16720, *et seq.*, set forth above.

    d. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, are otherwise unfair, unconscionable,

unlawful or fraudulent, whether or not in violation of Cal. Bus. & Prof. Code §§ 16720, *et seq.*, and whether or not concerted or independent acts.

e.  Defendants' acts or practices are unfair to consumers of Crop Inputs in the State of California within the meaning of Cal. Bus. & Prof. Code § 17200.

f.  Defendants' acts and practices are fraudulent or deceptive within the meaning of Cal. Bus. & Prof. Code § 17200.

g.  Members of the Classes are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

h.  The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

i.  The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause the members of the Classes to pay supracompetitive and artificially inflated prices for Crop Inputs. Members of the Classes suffered injury in fact and lost money or property as a result of such unfair competition.

j.  The conduct of Defendants as alleged in this Complaint violates Cal. Bus. & Prof. Code § 17200.

k.  As alleged in this Complaint, Defendants have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the Classes are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues,

earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

144.   **District of Columbia.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **D.C. Code §§ 28-3901,** *et seq.* with respect to purchases of Crop Inputs in D.C. by Class members and/or purchases by D.C. residents.

a.  Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Crop Inputs were sold, distributed or obtained in the District of Columbia.

b.  The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Members of the Classes were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Crop Inputs. Defendants had the sole power to set that price and members of the Classes had no power to negotiate a lower price. Moreover, members of the Classes lacked any meaningful choice in purchasing Crop Inputs because they were unaware of the unlawful overcharge and there was no alternative source of supply through which members of the Classes could avoid the overcharges. Defendants' conduct

62

with regard to sales of Crop Inputs, including their illegal conspiracy to secretly fix the price of Crop Inputs at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of members of the Classes. Defendants took grossly unfair advantage of members of the Classes. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Crop Inputs.

c.  Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

d.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code §§ 28-3901, *et seq.*, and, accordingly, members of the Classes seek all relief available under that statute.

145. **Florida.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Fla. Stat. §§ 501.201,** *et seq*, with respect to purchases of Crop Inputs in Florida by Class members and/or purchases by Florida residents.

      a. Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Florida; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

      b. During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

      c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured and are threatened with further injury.

      d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. §§ 501.201, *et seq*., and, accordingly, members of the Classes seek all relief available under that statute.

146. **Hawaii.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Haw. Rev. Stat. Ann. §§ 480-1,** *et seq.* with respect to purchases of Crop Inputs in Hawaii by Class members and/or purchases by Hawaii residents.

a. Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supra-competitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. Ann. §§ 480-1, *et seq.*, and, accordingly, members of the Classes seek all relief available under that statute.

147. **Illinois.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **815 Ill. Comp. Stat. Ann. 505/1, *et seq*.** with respect to purchases of Crop Inputs in Illinois by Class members and/or purchases by Illinois residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Crop Inputs prices were raised, fixed, maintained,

and stabilized at artificially high levels throughout Illinois; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Illinois commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. Ann. 505/1, *et seq.,* and, accordingly, members of the Classes seek all relief available under that statute.

148. **Kansas.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Kan. Stat. Ann. §§ 50-623, *et seq.*,** with respect to purchases of Crop Inputs in Kansas by Class members and/or purchases by Kansas residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) members of the Classes were deprived of free and open competition; and (4) members

of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Kansas commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. Ann. §§ 50-623, *et seq.* and, accordingly, members of the Classes seek all relief available under that statute.

149. **Maine.** have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Me. Rev. Stat. tit. 5, §§ 207, *et seq*.** with respect to purchases of Crop Inputs in Maine by Class members and/or purchases by Maine residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Maine; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

67

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Maine commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Me. Rev. Stat. tit. 5, §§ 207, *et seq.*, and, accordingly, members of the Classes seek all relief available under that statute.

150. **Massachusetts.** have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Mass. Gen. Laws ch. 93A, § 2** with respect to purchases of Crop Inputs in Massachusetts by Class members and/or purchases by Massachusetts residents.

a. Defendants were engaged in trade or commerce as defined by Mass. Gen. Laws ch. 93A.

b. Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling, and/or maintaining at artificial and non-competitive levels, the prices at which Crop Inputs were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from members of the Classes.

c. Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout

Massachusetts; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

d.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes were injured and are threatened with further injury.

e.  Defendants have or will be served with a demand letter in accordance with Mass. Gen. Laws ch. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

f.  By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of Mass. Gen. Laws ch. 93A, §2. Defendants' violations of Chapter 93A were knowing or willful, entitling members of the Classes to multiple damages.

151.  **Michigan.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Mich. Comp. Laws Ann. §§ 445.901,** *et seq.* with respect to purchases of Crop Inputs in Michigan by Class members and/or purchases by Michigan residents.

a.  Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated

throughout Michigan; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Michigan commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws Ann. §§ 445.901, *et seq.*, and, accordingly, members of the Classes seek all relief available under that statute.

152. **Minnesota.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Minn. Stat. §§ 325F.68,** *et seq.*, and **Minn. Stat. § 8.31** with respect to purchases of Crop Inputs in Minnesota by Class members and/or purchases by Minnesota residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota;

(3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Minnesota commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §§ 325F.68, *et seq.*, and Minn. Stat. § 8.31 and, accordingly, members of the Classes seek all relief available under that statute.

153. **Missouri.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Mo. Ann. Stat. §§ 407.010,** *et seq.*, with respect to purchases of Crop Inputs in Missouri by Class members and/or purchases by Missouri residents.

a. Plaintiff and the Class purchased Crop Inputs for personal, family, or household purposes.

b. Defendants engaged in the conduct described herein in connection with the sale of Crop Inputs in trade or commerce in a market that includes Missouri.

c.  Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Crop Inputs were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to members of the Classes.

d.  Defendants concealed, suppressed, and omitted to disclose material facts to members of the Classes concerning Defendants' unlawful activities and artificially inflated prices for Crop Inputs. The concealed, suppressed, and omitted facts would have been important to members of the Classes as they related to the cost of Crop Inputs they purchased.

e.  Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Crop Inputs by making public statements that were not in accord with the facts.

f.  Defendants' statements and conduct concerning the price of Crop Inputs were deceptive as they had the tendency or capacity to mislead members of the Classes to believe that they were purchasing Crop Inputs at prices established by a free and fair market.

g.  Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) members of the

Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

h. The foregoing acts and practices constituted unlawful practices in violation of Mo. Ann. Stat. §§ 407.010, *et seq.*

i. As a direct and proximate result of the above-described unlawful practices, members of the Classes suffered ascertainable loss of money or property.

j. Accordingly, members of the Classes seek all relief available under Mo. Ann. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by Mo. Code Regs. Ann. tit. 15, §§ 60-7.010, *et seq.*, Mo. Code Regs. Ann. tit. 15, §§ 60-8.010, *et seq.*, and Mo. Code Regs. Ann. tit. 15, §§ 60-9.010, *et seq.*, and Mo. Ann. Stat. § 407.025, which provides for the relief sought in this count.

154.    **Montana.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Mont. Code §§ 30-14-101, *et seq.*** with respect to purchases of Crop Inputs in Montana by Class members and/or purchases by Montana residents.

a. Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Montana; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq.*, and, accordingly, members of the Classes seek all relief available under that statute.

155. **Nebraska.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Neb. Rev. Stat. Ann. §§ 59-1601, *et seq***, with respect to purchases of Crop Inputs in Nebraska by Class members and/or purchases by Nebraska residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Crop Inputs prices were raised, fixed, maintained,

and stabilized at artificially high levels throughout Nebraska; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Nebraska commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. Ann. §§ 59-1601, *et seq.* and, accordingly, members of the Classes seek all relief available under that statute.

156.    **Nevada.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Nev. Rev. Stat. Ann. §§ 598.0903, *et seq.*** with respect to purchases of Crop Inputs in Nevada by Class members and/or purchases by Nevada residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) members of the Classes were deprived of free and open competition; and (4) members

75

of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Nevada commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. Ann. §§ 598.0903, *et seq.* and, accordingly, members of the Classes seek all relief available under that statute.

157. **New Hampshire.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **N.H. Rev. Stat. Ann. §§ 358-A:1, *et seq.*** with respect to purchases of Crop Inputs in New Hampshire by Class members and/or purchases by New Hampshire residents.

a. Defendants willingly and knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Crop Inputs were sold, distributed or obtained in New Hampshire and took efforts to conceal their agreements from members of the Classes.

b. The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.H. Rev. Stat. §§ 358-

76

A:1, *et seq*., in that such conduct, *inter alia*, resulted in a gross disparity between the value received by members of the Classes and the prices paid by them for Crop Inputs as set forth in N.H. Rev. Stat. §§ 358-A:1, *et seq*.. Members of the Classes were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Crop Inputs. Defendants had the sole power to set that price and members of the Classes had no power to negotiate a lower price. Moreover, members of the Classes lacked any meaningful choice in purchasing Crop Inputs because they were unaware of the unlawful overcharge and there was no alternative source of supply through which members of the Classes could avoid the overcharges. Defendants' conduct with regard to sales of Crop Inputs, including their illegal conspiracy to secretly fix the price of Crop Inputs at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of members of the Classes. Defendants took grossly unfair advantage of members of the Classes. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Crop Inputs.

c.  Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

d.  During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce and consumers.

e.  As a direct and proximate result of the unlawful conduct of Defendants, members of the Classes have been injured and are threatened with further injury.

f.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. §§ 358-A:1, *et seq*., and, accordingly, members of the Classes seek all relief available under that statute.

158.  **New Mexico.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **N.M. Stat. Ann. §§ 57-12-1, *et seq.*** with respect to purchases of Crop Inputs in New Mexico by Class members and/or purchases by New Mexico residents.

a.  Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and

artificially inflated levels, the prices at which Crop Inputs were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from members of the Classes.

b. The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M. Stat. Ann. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by members of the Classes and the prices paid by them for Crop Inputs as set forth in N.M. Stat. Ann. § 57-12-2(E). Members of the Classes were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Crop Inputs. Defendants had the sole power to set that price and members of the Classes had no power to negotiate a lower price. Moreover, members of the Classes lacked any meaningful choice in purchasing Crop Inputs because they were unaware of the unlawful overcharge and there was no alternative source of supply through which members of the Classes could avoid the overcharges. Defendants' conduct with regard to sales of Crop Inputs, including their illegal conspiracy to secretly fix the price of Crop Inputs at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of members of the Classes. Defendants took grossly unfair

advantage of members of the Classes. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Crop Inputs.

c.  Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

d.  During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

e.  As a direct and proximate result of the unlawful conduct of Defendants, members of the Classes have been injured and are threatened with further injury.

f.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. §§ 57-12-1, *et seq.*, and, accordingly, members of the Classes seek all relief available under that statute.

159.  **New York.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **N.Y. Gen. Bus.**

**Law §§ 349,** *et seq.* with respect to purchases of Crop Inputs in New York by Class members and/or purchases by New York residents.

    a. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Crop Inputs were sold, distributed or obtained in New York and took efforts to conceal their agreements from members of the Classes.

    b. Defendants made public statements about the prices of Crop Inputs that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Crop Inputs; and Defendants alone possessed material information that was relevant to consumers but failed to provide the information.

    c. Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Crop Inputs were misled to believe that they were paying a fair price for Crop Inputs or the price increases for Crop Inputs were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

d.  Defendants knew that their unlawful trade practices with respect to pricing Crop Inputs would have an impact on New York consumers and not just the Defendants' direct customers.

e.  Defendants knew that their unlawful trade practices with respect to pricing Crop Inputs would have a broad impact, causing consumer class members who indirectly purchased Crop Inputs to be injured by paying more for Crop Inputs than they would have paid in the absence of Defendants' unlawful trade acts and practices.

f.  The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

g.  Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout New York; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

h. During the Class Period, Defendants' marketed, sold, or distributed Crop Inputs in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

i. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Crop Inputs in New York.

j. Members of the Classes seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

160. **North Carolina.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **N.C. Gen. Stat. §§ 75-1.1,** *et seq.* with respect to purchases of Crop Inputs in North Carolina by Class members and/or purchases by North Carolina residents.

a. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Crop Inputs were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from members of the Classes.

b. Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation, and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which members of the Classes could not

possibly have been aware. Defendants publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of Crop Inputs created the illusion of competitive pricing controlled by market forces rather than supracompetitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, and avoiding the creation of documents which would reveal the antitrust violations.

c. The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

d. Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

e. During the Class Period, Defendants' marketed, sold, or distributed Crop Inputs in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

f. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Crop Inputs in North Carolina.

g. Members of the Classes seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. §§ 75-1.1, *et seq.*, and, accordingly, members of the Classes seek all relief available under that statute.

161. **Oregon.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Or. Rev. Stat. §§ 646.605,** *et seq.* with respect to purchases of Crop Inputs in Oregon by Class members and/or purchases by Oregon residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) members of the Classes were deprived of free and open competition; and (4) members

85

of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. §§ 646.605, *et seq.*, and, accordingly, members of the Classes seek all relief available under that statute.

162.  **Rhode Island.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **6 R.I. Gen. Laws Ann. §§ 6-13.1-1, *et seq.*** with respect to purchases of Crop Inputs in Rhode Island by Class members and/or purchases by Rhode Island residents.

a.  Members of this Class purchased Crop Inputs for personal, family, or household purposes.

b.  Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Crop Inputs were sold, distributed, or obtained in Rhode Island.

c.  Defendants deliberately failed to disclose material facts to members of the Classes concerning Defendants' unlawful activities and artificially inflated prices for Crop Inputs. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' Crop Inputs prices were competitive and fair.

d.  Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

e.  As a direct and proximate result of the Defendants' violations of law, members of the Classes suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

f.  Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Crop Inputs, likely misled all consumers acting reasonably under the circumstances to believe that they were

purchasing Crop Inputs at prices set by a free and fair market. Defendants'
affirmative misrepresentations and omissions constitute information
important to members of the Classes as they related to the cost of Crop
Inputs they purchased.

g. Defendants have engaged in unfair competition or unfair or deceptive acts
or practices in violation of 6 Rhode Island Gen. Laws. Ann. § 6-13.1-1, *et
seq.*, and, accordingly, members of the Classes seek all relief available
under that statute.

163. **South Carolina.** Defendants have engaged in unfair competition or unfair,
unconscionable, deceptive or fraudulent acts or practices in violation of **S.C. Code Ann.
§§ 39-5-10, *et seq.*** with respect to purchases of Crop Inputs in South Carolina by Class
members and/or purchases by South Carolina residents.

a. Defendants' combination or conspiracy had the following effects: (1) Crop
Inputs price competition was restrained, suppressed, and eliminated
throughout South Carolina; (2) Crop Inputs prices were raised, fixed,
maintained, and stabilized at artificially high levels throughout South
Carolina; (3) members of the Classes were deprived of free and open
competition; and (4) members of the Classes paid supracompetitive,
artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial
effect on South Carolina commerce.

88

    c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, members of the Classes seek all relief available under that statute.

164.  **South Dakota.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **S.D. Codified Laws § 37-24-6** with respect to purchases of Crop Inputs in South Dakota by Class members and/or purchases by South Dakota residents.

    a.  Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

    b.  During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

    c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-6, and, accordingly, members of the Classes seek all relief available under that statute.

165.   **Tennessee.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Tenn. Code Ann. §§ 47-18-101,** *et seq.* with respect to purchases of Crop Inputs in Tennessee by Class members and/or purchases by Tennessee residents.

    a.  Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

    b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

    c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code Ann. §§ 47-18-101, *et seq*, and, accordingly, members of the Classes seek all relief available under that statute.

166. **Utah.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Utah Code Ann. §§ 13-11-1, *et seq.*** with respect to purchases of Crop Inputs in Utah by Class members and/or purchases by Utah residents.

    a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Utah; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

    b. During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. §§ 13-11-1, *et seq.*, and,

accordingly, members of the Classes seek all relief available under that statute.

167. **Virginia.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Va. Code Ann. §§ 59.1-196,** *et seq.* with respect to purchases of Crop Inputs in Virginia by Class members and/or purchases by Virginia residents.

    a. Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Virginia; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Virginia; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

    b. During the Class Period, Defendants' illegal conduct had a substantial effect on Virginia commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

    d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code Ann. §§ 59.1-196, *et seq*, and, accordingly, members of the Classes seek all relief available under that statute.

168. **Vermont.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Vt. Stat. Ann. tit. 9, §§ 2453, *et seq.*** with respect to purchases of Crop Inputs in Vermont by Class members and/or purchases by Vermont residents.

    a. Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Crop Inputs were sold, distributed, or obtained in Vermont.

    b. Defendants deliberately failed to disclose material facts to members of the Classes concerning their unlawful activities and artificially inflated prices for Crop Inputs. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their Crop Inputs prices were competitive and fair.

    c. Defendants' unlawful conduct had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) members of the Classes were deprived of free and open competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

d.  As a direct and proximate result of Defendants' violations of law, members of the Classes suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

e.  Defendants' deception, including their omissions concerning the price of Crop Inputs, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Crop Inputs at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*, and, accordingly, members of the Classes seek all relief available under that statute.

169.  **West Virginia.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **W. Va. Code §§ 46A-6-101, *et seq*.** with respect to purchases of Crop Inputs in West Virginia by Class members and/or purchases by West Virginia residents.

a.  Defendants' combination or conspiracy had the following effects: (1) Crop Inputs price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Crop Inputs prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) members of the Classes were deprived of free and open

competition; and (4) members of the Classes paid supracompetitive, artificially inflated prices for Crop Inputs.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Classes have been injured in their business and property and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code §§ 46A-6-101, *et seq.* and, accordingly, members of the Classes seek all relief available under that statute.

170. Plaintiff and members of the Classes have been injured in their business and property by reason of Defendants' anticompetitive, unfair, unconscionable, and/or deceptive conduct. Their injury consists of paying higher prices for Crop Inputs than they would have paid in the absence of these violations. This injury is of the type the state consumer protection statutes were designed to prevent and directly results from Defendants' unlawful conduct.

171. On behalf of itself and the Classes, Plaintiff seeks all appropriate relief provided for under the foregoing statutes.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment

172.  Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

173.  As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Crop Inputs.

174.  Defendants have benefited from their unlawful acts and it would be inequitable under unjust enrichment principles under the laws of each state in the United States for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff or the Class members for Crop Inputs.

175.  As a direct and proximate result of Defendants' conduct described above, Defendants have and will continue to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits from Defendants' sales of Crop Inputs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of itself and the Classes of all others so similarly situated, respectfully requests judgment against Defendants as follows:

1.  That the Court determines that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as a Class Representative and its counsel of record as Class Counsel, and

direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class, once certified;

2.      That the unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed:

a.  An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

b.  A *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

c.  An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

d.  Acts of unjust enrichment by Defendants as set forth herein.

3.      That Plaintiff and the Classes recover damages, to the maximum extent allowed under the applicable state laws, and that a joint and several judgments in favor of Plaintiff and the members of the Classes be entered against Defendants in an amount to be trebled to the extent such laws permit;

4.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

97

5.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the sharing of highly sensitive competitive information that permits identification of company's information;

6.    Plaintiff and the members of the Classes be awarded pre-and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint;

7.    Plaintiff and the Class members recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

8.    Plaintiff and the Class members have such other and further relief as the case may require and the Court deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, on all issues so triable.

Dated:   March 4, 2021                    Respectfully submitted,

__/s/Patrick Howard_____
Patrick Howard, Esq. (PA Atty. ID # 88572)
Simon B. Paris, Esq.
SALTZ, MONGELUZZI, & BENDESKY, P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone:  (215) 496-8282
Facsimile:  (215) 496-0999
E-mail:  phoward@smbb.com
E-mail:  sparis@smbb.com

Roberta D. Liebenberg, PA ID # 31738
Gerard A. Dever, PA ID # 85291
Jessica D. Khan, PA ID # 208875
**FINE, KAPLAN AND BLACK, RPC**
One South Broad Street, 23rd Floor
Philadelphia, PA  19107
Telephone: (215) 567-6565
Facsimile:  (215) 568-5872
E-mail: rliebenberg@finekaplan.com
E-mail: gdever@finekaplan.com
E-mail: jkhan@finekaplan.com

Michael J. Boni
Joshua D. Snyder
**BONI, ZACK & SNYDER LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: (610) 822-0200
Facsimile: (610) 822-0206
E-mail:  mboni@bonizack.com
E-mail:  jsnyder@bonizack.com

Dianne M. Nast (PA Atty. ID No. 24424)
**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Telephone: (215) 923-9300
Facsimile: (215) 923-9302
Email:  dnast@nastlaw.com

*Counsel for Plaintiff*